# J. A. Elliott et al., Appellees, v. Arabella A. Anderson, Appellant.

STATUTE OF FRAUDS—*when defense to action for damages for refusal to convey land.* In the absence of a contract executed by the owner of land or by his duly authorized agent, a recovery of damages cannot be had for an alleged failure to convey.

Appeal from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1911. Reversed. Opinion filed October 14, 1911. Rehearing denied, opinion modified November 11, 1911.

E. J. MILLER, for appellant.

E. E. WRIGHT and JACK, DECK & WHITFIELD, for appellees.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

Plaintiffs allege in their declaration that defendant bargained and sold to them a certain tract of land located in Moultrie county, Illinois, that she failed to carry out her contract and convey the premises in accordance therewith and this suit is brought by them to recover damages alleged to have been caused by reason of such failure. The jury returned a verdict for plaintiffs of $300 upon which judgment was rendered and from which defendant prosecutes this appeal.

The declaration charges in all counts except two that the defendant bargained and sold to the plaintiffs the lands in question and signed a written agreement to convey said premises to the plaintiffs upon the payment of certain considerations therein expressed. The other two counts charge that defendant by and through

an agent duly authorized by her, made and executed a contract for the conveyance to them of the premises in question. The counts all allege readiness and willingness on the part of the plaintiffs to fulfil the contract and pay the defendant the amount due on delivery of the deed. Defendant pleaded the general issue and the Statute of Frauds.

The record discloses that no contract in writing was ever signed, executed or entered into by the defendant with the plaintiffs, and there is no attempt to sustain those counts of the plaintiffs' declaration in which they allege a contract executed by the defendant. In support of the counts which allege that the defendant, by and through a duly authorized agent, made and executed a contract with the plaintiffs, the evidence discloses that one Int Stanley, whom plaintiffs claim was the duly authorized agent of the defendant and who executed the contract for her, was the publisher of a newspaper, dealing in real estate in his leisure hours; that Stanley wrote to the defendant, stating that he thought he could dispose of the real estate for $150 per acre and asked defendant if she desired to sell. He was informed by her that she did desire to sell, and she asked him if he could find a buyer and told him if he could to sell the land. Some time after this, plaintiffs went to Stanley and informed him that they would like to buy this farm and asked him whether it was for sale, or whether he had it for sale. He informed them that he had, and after some negotiations between the plaintiffs and Stanley, a contract was drawn up between them and signed by the plaintiffs and signed by Stanley as the agent of the defendant. The record does not disclose in any way that Stanley had any authority whatever to sign, execute or deliver a contract for the defendant, and in his testimony he denies that he had such authority, and testifies that he so informed the plaintiffs, and the record discloses that the contract which was made was signed by him

as her agent at their request for the purpose of attempting to hold the land under the contract; that it was placed in the hands of a banker at Lovington in escrow, with the distinct understanding that Stanley should send a telegram to the defendant, which he did, informing her of the sale of the land with the hope that she would reply by telegram ratifying his action. The telegram sent by Stanley informed the defendant that he had written a letter enclosing deeds for her to execute. Defendant did not ratify the contract, but on the contrary refused to execute the deed and directed Stanley to cancel the contract. The contract left with Hostetler in the bank was endorsed as follows: "Not to be delivered until deed is put up." Regarding this contract Elliott testified: "The reason I gave the contract to Hostetler was because that was the agreement between Stanley and me; he (Hostetler) was told to hold it until March 1. I told him the check was not to be delivered till I got the deed. The contract was to be held until the check and deed were delivered. I told Hostetler when you receive the deed to the land you hand Stanley the check and hold the contract." Stanley testified: "I told these gentlemen I had no authority to sign her name to bind it unless she ratified it afterwards by letter or telegram. They said they wanted me to sign it so if she ratified it there could be no kick afterwards. The check was never delivered to me. There was no money paid to me by anyone. We agreed that the check and contract should be left at the bank and afterwards wire her. Upon the acceptance I was to get the $500 and they were to get the deed. I told him I had no authority to sign her name, that we would draw up the contract and leave it with some one subject to her acceptance." Under these conditions the contract was never delivered and never became operative. The defendant refused to execute and deliver the deed.

The contract upon which this suit is based was **not**

signed by the defendant either by herself or by her agent. The contract bore the signature of Stanley "agent for defendant." Her name was not in the body of the contract and appeared at no place except after the signature of Stanley whereby he describes himself as her agent. This did not make it the contract of the defendant. The averments in the counts of the declaration which allege the execution and delivery of the contract by the defendant through a duly authorized agent are not supported by the evidence in this record.

Defendant also insists that the court admitted numerous improper conversations and talks had by and between the plaintiffs and various other witnesses testified concerning the purchase of this land.

While these conversations were improper and objections thereto should have been sustained, it is not necessary in the view we have taken of this record to enter into any discussion of this or the other errors assigned.

For the reasons above set forth the judgment must be reversed and the clerk will enter in the judgment of this court the finding of fact that the contract agreement or memorandum of agreement was never executed.

Judgment is reversed.

*Reversed.*